UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────
AILEEN GOLDSTEIN, individually and on
behalf of all others similarly situated,

      Plaintiff,

  -against-

SALLY BEAUTY SUPPLY LLC,

      Defendant.
───────────────────────────────

**MEMORANDUM & ORDER**

**20-CV-4583 (NGG) (JRC)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Aileen Goldstein brings this putative class action against Defendant Sally Beauty Supply LLC, asserting statutory consumer protection violations and common law claims, and seeking monetary and injunctive relief. (*See* Compl. (Dkt. 1).) Defendant moves to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons explained below, Defendant's motion is GRANTED.

### I. BACKGROUND

The following facts are taken from the Complaint, which the court accepts as true at this procedural posture. *See Harris v. Mills,* 572 F.3d 66, 71 (2d Cir. 2009).[1]

#### A. Factual Background

Defendant is a Texas-based company, incorporated in Virginia, that sells certain beauty products and operates beauty supply stores worldwide, including in New York State. (Compl. ¶¶ 1, 2, 32, 34.) Those beauty products include hair care supplies, such as shampoo and conditioner, and other similar items. (*Id.* ¶¶ 4-6.) These products are sold in various sizes, including in large-

---

[1] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

volume bottles. (*Id.*) The front-facing label of each bottle identifies the volume of product that the bottle contains. (*Id.*) On each of those labels, the volume of the bottle's contents is displayed in both its Imperial measurement (ounces) and metric measurement (liters), *e.g.*, one-liter bottles are labeled "33.8 FL OZ./1 LITER," and certain other bottles, which are slightly smaller, are labeled "946 mL/32 FL OZ." (*Id.*)

Plaintiff does not allege that the bottle labels inaccurately represent the volume of product that any of the bottles contains. Instead, Plaintiff's complaint revolves around promotional events that Defendant holds at least twice a year. (*Id.* ¶ 3.) During these events, called "Liter Sales," Defendant sells various products at discounted prices. (*Id.* ¶ 6.) Defendant advertises these Liter Sales in its stores and online. (*Id.* ¶¶ 4, 5.) In at least some of these advertisements, the phrase "LITER SALE" is displayed, along with images of various products, including images of products sold in one-liter bottles and/or images of products sold in 946-milliliter bottles. (*Id.* ¶¶ 4-6.) Plaintiff also observes that, although the bottle labels accurately reflect the volume of the bottles' contents, some of the shelf tags for 32-ounce bottles are improperly labeled "33.8 OZ." (*Id.* ¶ 11.) The crux of Plaintiff's allegations is that Defendant's Liter Sales, and its advertising for those sales, unlawfully mislead and take advantage of consumers by promising them discounted one-liter bottles and delivering discounts on both one-liter and 946-milliliter ones. (*Id.* ¶ 10.)

Plaintiff, a New York citizen, has purchased products sold by Defendant during Liter Sales and hopes to purchase them again in the future. (*Id.* ¶¶ 33, 40.)

### B. Plaintiff's Claims and Defendant's Motion to Dismiss

Plaintiff filed a complaint on September 26, 2020, asserting five claims: (1) violation of New York State consumer protection

laws; (2) negligent misrepresentation; (3) breach of express warranty, implied warranty of merchantability, and the Magnuson Moss Warranty Act ("MMWA"); (4) fraud; and (5) unjust enrichment. (Compl. at 14-16.) Plaintiff seeks monetary and injunctive relief. (*Id.* at 16-17.)

Defendant moved to dismiss Plaintiff's complaint for failure to state a claim on June 4, 2021. (Mot. to Dismiss (Dkt. 13); Mem. in Supp. of Mot. to Dismiss ("Mot. to Dismiss") (Dkt. 13-1).) On June 25, 2021, Plaintiff served its opposition to Defendant's motion to dismiss, and, on July 7, 2021, Defendant served its reply and filed the fully briefed motion. (Opp. to Mot. to Dismiss ("Opp.") (Dkt. 14); Reply in Supp. of Mot. to Dismiss ("Reply") (Dkt. 15).)

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Plausibility depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

"In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Brown v. Omega Moulding Co.*, No. 13-cv-5397 (SJF) (ARL), 2014 WL 4439530, at *2 (E.D.N.Y. Sept. 9, 2014)

(citing *Aegis Ins. Services, Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013)). However, "mere labels and conclusions or formulaic recitations of the elements of a cause of action will not do; rather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). "In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, as well as documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007).

### III. DISCUSSION

Defendant moves to dismiss the complaint for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6). For the reasons explained below, Defendant's motion is GRANTED.

#### A. New York Statutory Consumer Protection Laws

Plaintiff first claims that Defendant's conduct in connection with the Liter Sales violates the New York General Business Law ("NY-GBL") §§ 349 and 350. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York State]." N.Y. Gen. Bus. Law § 349. Similarly, Section 350 proscribes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Id.* at § 350.

"To successfully assert a claim under either NYGBL Section 349 or 350, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *George v. Starbucks Corp.*, 857 F. App'x 705, 706 (2d Cir. 2021). "[T]he New York Court of Appeals has adopted an objective definition of 'misleading,' under which the

4

alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). While, ordinarily, "courts should [] refrain from resolving questions of reasonableness on a motion to dismiss," *George*, 857 F. App'x at 706, it is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer," *Fink*, 714 F.3d at 741. "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *George*, 857 F. App'x at 707.

Plaintiff has not sufficiently pleaded that the Liter Sales were likely to mislead a reasonable consumer under the circumstances. As alleged by Plaintiff, each bottle is accurately labeled with the volume of product that it contains: Plaintiff acknowledges that one-liter bottles are accurately labeled "33.8 FL. OZ./1 LITER," and Plaintiff acknowledges that 946-milliliter bottles are accurately labeled "946 mL[/]32 FL. OZ." (*Id.* ¶¶ 13, 14.) It is apparent from the photographs included in the Complaint that these labels are placed in an easily viewable position in the same location—on the front, directly below the name and description of the product—in plainly printed text on each bottle. (*Id.*)

Viewing these allegations in light of the context, a reasonable consumer would not be misled into thinking that Defendant's promotional Liter Sale would suggest that a bottle that is plainly labeled "946 mL" actually contained one liter of product. Nor would a reasonable consumer be misled by shelf tags when the pertinent information is prominently displayed on the product itself.[2] That conclusion is particularly apparent where the one-

---

[2] The court shares Plaintiff's frustration over improper shelf tags, however, where the product itself clearly states the relevant information, the court

5

liter and 946-milliliter bottles are in close proximity, such that their labels may be directly compared to each other. And, further, it would be unreasonable to construe an advertisement for a "LITER SALE" in a store to constitute a promise that *only* liter-sized items were on sale in that store. *See Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 341 (E.D.N.Y. 2018) (dismissing false advertising claim because a reasonable consumer would not expect that juice labeled as "cold-pressed" was *only* cold-pressed, and not subject to any other preparation processes).

A reasonable consumer, when confronting various options, would look at the bottle to decide which product to purchase. In doing so, they would see (a) the kind of product contained (*e.g.*, shampoo or conditioner); (b) any details about the specific purposes for that product (*e.g.*, if it is for color-treated hair, curly hair, or any other kind of hair); and (c) the volume of product it contains (*e.g.*, 946 milliliters or one liter). Such a consumer, in that context, would interpret a Liter Sale to provide discounts on liter-sized items, and they would not be surprised to find that other items are discounted as well. Thus, Plaintiff's Section 349 and 350 claims are dismissed.

### B. Negligent Misrepresentation

Plaintiff next asserts a negligent misrepresentation claim against Defendant. To adequately plead negligent misrepresentation, Plaintiff must allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *J.A.O.*

---

agrees with Defendant that a reasonable consumer would defer to the information on the product. By way of analogy, it would be equally reasonable for a consumer to defer to the tag on a shirt labeled "medium" that was wrongfully placed above a sign for "small" shirts in a clothing store.

*Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007). Defendant argues that the negligent misrepresentation claim must be dismissed because, *inter alia*, Plaintiff has not pleaded the existence of a special relationship with Defendant. (Mot. to Dismiss at 16-17.)

To demonstrate the existence of a "special relationship," a plaintiff must show that the defendant "possess[es] unique or specialized expertise," or is "in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996). While "[p]rofessionals, such as lawyers and engineers," may owe such a duty, "a vast majority of commercial transactions [] comprise[] 'casual' statements and contacts" that do not trigger a special relationship. *Id.*

Plaintiff argues (1) that a special relationship existed, based on Defendant's special knowledge and experience in the sale of consumer goods, or, alternatively, (2) that the existence of such a relationship is a factual inquiry that cannot be resolved on a motion to dismiss. (Opp. at 15.) Taking Plaintiff's allegations as true and construing all inferences in her favor, however, Plaintiff has not pleaded sufficient facts to support a finding that any relationship beyond an ordinary commercial one existed. *See Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (requiring plaintiff to allege more than "the typical arm's length business transaction" to survive a motion to dismiss). Plaintiff acknowledges that Defendant distributes and sells products to a general market, (Compl. ¶¶ 1, 2, 4-6.), and does not allege any representations or statements inducing reliance that Defendant made specifically to her, *cf. Suez Equity Invs., L.P.*, 250 F.3d at 103. Thus, Plaintiff has merely alleged the kind of general commercial relationship that does not give rise to liability for negligent misrepresentation in New York. *See Kimmell*, 89 N.Y.2d

7

at 263. Accordingly, her negligent misrepresentation claim is dismissed.

### C. Breach of Warranties

Plaintiff also asserts a claim for breach of express warranty, breach of implied warranty, and breach of the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.* (Compl. ¶¶ 63-70.)

#### 1. Express Warranty

Defendant argues for dismissal of the express warranty claim because Plaintiff has not identified any "express representations—that is, a literal affirmation of fact or promise about the specific thing Plaintiff alleges to be untrue." (Mot. to Dismiss at 17.)

"New York breach of express warranty claims require (i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach." *Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 235 (E.D.N.Y. 2015).

Under New York law, "a material statement amounting to a warranty" may be pled by alleging "any affirmation of fact or promise made by the seller to the buyer which relates to the goods or any description of the goods that is part of the basis of the bargain." *Gonzalez v. Costco Wholesale Corp.*, No. 16-cv-2590 (NGG)(JO), 2018 WL 4783962, at *8 (E.D.N.Y. Sept. 29, 2018) (citing N.Y. Uniform Comm. Code § 2-313). "[G]eneralized and vague allegations that express warranties were made are not enough" to survive a 12(b)(6) motion. *Miccio v. Conagra Foods, Inc.*, 224 F. Supp. 3d 200, 207 (W.D.N.Y. 2016). Instead, "[t]he statement must be definite enough so that its natural tendency is to induce the buyer to purchase." *Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 877, 894 (E.D.N.Y. 2018).

8

Plaintiff alleges that Defendant "warranted . . . that [their products] possessed substantive, quality, compositional and/or environmental [characteristics] [sic] which they did not." (Compl. ¶ 64.) Construing all reasonable inferences in favor of Plaintiff, the Complaint appears to allege, in sum, that the promotional statements in Defendant's advertising for its Liter Sales were express warranties about the volume of product contained in each bottle on which she and others relied. (*See generally* Compl.)

Plaintiff has not adequately alleged that an express warranty existed. As explained above, the Liter Sales promoted discounts on liter-sized as well as other-sized bottles. Also as explained above, the size label on the bottle controls, when viewed from the perspective of the reasonable consumer. Further, the phrase "Liter Sale" does not convey the kind of specificity required for this claim. *See Oden*, 330 F. Supp. 3d at 894. Because Defendant did not expressly warrant that, during a Liter Sale, *only* liter-sized products would be discounted, Plaintiff's express warranty claim fails.

2. Implied Warranty of Merchantability

"The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp.*, 230 A.D.2d 326, 330 (1997) (citing N.Y. Uniform Comm. Code § 2–314). This inquiry "focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." *Wojcik v. Empire Forklift, Inc.*, 14 A.D.3d 63, 66 (2004). Plaintiff alleges, not that the products were unfit for their common use, but that they could not pass in commerce without objection. (Opp. at 16-17.) Plaintiff's evidence of that claim seems to be, exclusively, that she has objected. (*Id.*) That threadbare and conclusory allegation is insufficient to survive a

9

12(b)(6) motion to dismiss. *See Arista Records, LLC*, 604 F.3d at 120. Thus, her implied warranty of merchantability claim also fails.

### 3. Magnuson Moss Warranty Act

"The MMWA grants relief to a consumer 'who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty.'" *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)). Plaintiff has not alleged the existence of any "written warranty," defined by the statute as "any written affirmation of fact or written promise . . . [that] affirms or promises that [the product] is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). Accordingly, Plaintiff's MMWA claim also fails.

### D. Fraud

Plaintiff next alleges that Defendant's conduct constitutes common law fraud. (Compl. ¶¶ 71-74.) "Under New York law, a claim for fraud requires a false misrepresentation of a material fact." *Brady*, 101 F. Supp. 3d at 237. As discussed *supra*, (*see* Section III.A.), Plaintiff has not alleged a material misrepresentation; therefore Plaintiff cannot satisfy the heightened particularity standard required to plead fraud. Thus, Plaintiff's fraud claim is also dismissed.

### E. Unjust Enrichment

Finally, Plaintiff asserts an unjust enrichment claim against Defendant. (Compl. ¶¶ 75-76.) Specifically, Plaintiff alleges that "Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members." (*Id.* ¶ 76.) Defendant argues that Plaintiff's unjust enrichment must be dismissed as duplicative. (Mot. to Dismiss at 20.) The court agrees. *Corsello v. Verizon N.Y., Inc.*, 944 N.Y.S.2d 732, 740 (N.Y. 2012);

*Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 77 (E.D.N.Y. 2017) ("[U]njust enrichment is not a catchall cause of action to be used when others fail . . . [and a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim. If a plaintiff's other claims are defective . . . an unjust enrichment claim cannot remedy the defects."); *see also Gonzalez v. Costco Wholesale Corp.*, No. 16-cv-2590 (NGG)(JO), 2018 WL 4783962, at *11 (E.D.N.Y. Sept. 29, 2018) (dismissing unjust enrichment claim as duplicative of other claims).

### F. Injunctive Relief

Because Plaintiff's substantive claims are dismissed, her prayer for injunctive relief necessarily fails.

### IV. CONCLUSION

For the reasons explained above, Defendant's motion to dismiss [Dkt. 13] is GRANTED. The clerk of the court is respectfully directed to close the case.

SO ORDERED.

Dated:   Brooklyn, New York
         November 5, 2021

                                        _/s/ Nicholas G. Garaufis_
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge

11